FILED

08/23/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 7, 2017

## STATE OF TENNESSEE v. JONQUARIUS CUNNINGHAM

**Appeal from the Circuit Court for Madison County**
**No. 14-423    Kyle Atkins, Judge**

_____

### No. W2016-00065-CCA-R3-CD

_____

The Defendant, Jonquarius Cunningham, was convicted of one count of attempted second degree murder, one count of reckless endangerment, two counts of employing a firearm during the attempt to commit a dangerous felony, and two counts of aggravated assault. The trial court sentenced the Defendant to an effective sentence of twenty-three years' incarceration. On appeal, he argues that the evidence is insufficient to sustain his convictions and that the trial court erred by ordering consecutive sentences. Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, JJ., joined.

Anna B. Cash, Jackson, Tennessee, for the Defendant-Appellant, Jonquarius Cunningham.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jerry Woodall, District Attorney General; and Benjamin C. Mayo, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

This case concerns the shooting of the two victims, Gary Patrick and Jerry Massengill, on July 21, 2013. The Defendant, who was sixteen years old at the time of the offenses, was originally charged in the Madison County Juvenile Court with two counts of attempted first degree murder. In November 2013, the juvenile court transferred the Defendant's case to the Madison County Circuit Court.

On July 28, 2014, the Defendant and his co-defendant, Randy Taylor, Jr., were indicted by a Madison County Grand Jury for two counts of attempted first degree murder, two counts of aggravated assault, and two counts of possession of a firearm during the commission of the attempted first degree murders. As relevant to the issues raised by the Defendant in this appeal, the facts presented at the June 30, 2015, trial were as follows:

Gary Patrick testified that, on July 21, 2013, he was on Conger Street in Jackson, Tennessee to meet his friend, Jerry Massengill. Patrick saw two classmates from school, the Defendant and Taylor, as he was walking down the street with Massengill. Patrick said that no words were exchanged as he and Massengill passed by the Defendant and Taylor. Patrick testified that "[a] second later [he] heard shots" and he turned around to see both the Defendant and Taylor shooting at him. Patrick also testified that they continued shooting at him as he ran away and after he fell to the ground. Patrick identified the Defendant at trial and in a photographic lineup shortly after the shooting. Patrick was shot thirteen times, including once in the neck, and was paralyzed and confined to a wheelchair as a result of his injuries.

On cross-examination, Patrick said that he had not talked to either the Defendant or Taylor that morning. Regarding what the shooters were wearing, Patrick could only recall that Taylor was wearing a "fishing hat." Patrick confirmed that he was deposed on November 1, 2013, while he was still in the hospital. He did not recall the answers he gave during the deposition, although he recalled participating in the deposition. Patrick also confirmed that he answered questions that the Defendant asked him on Facebook. Patrick said that he did not remember the Facebook conversation, although he confirmed the messages were sent from his account. Defense counsel read the messages, in which the Defendant asked, "What made you tell them I shot you? What made you think that?" and to which Patrick replied, "Cuz [sic] you're the only one I seen [sic] run up and my big brother said you did."

On redirect, Patrick confirmed that, at his deposition, he repeatedly said that he saw the Defendant shooting at him. Patrick also said that he only responded to the Defendant's Facebook messages so that the Defendant would leave him alone. On recross examination, Patrick said that he could not describe the Defendant's gun but that he remembered one shooter was wearing a hoodie and one was wearing a fishing hat.

Jerry Massengill testified that he was Patrick's brother-in-law and that they were friends in July 2013. Massengill confirmed that he was on Conger Street with Patrick around 8:00 a.m. Massengill saw both the Defendant and Taylor on Conger Street, but he did not know them at the time. Massengill said that he and Patrick walked by the Defendant and Taylor and that no one said anything. Massengill then heard shots, turned

around to see the Defendant and Taylor shooting at him and Patrick, and ran to the side of a building. Massengill suffered a graze wound to his hand, but was not shot. Massengill testified that Taylor was wearing a fishing hat and the Defendant was wearing a hoodie. Massengill was not able to identify the Defendant in a photographic lineup. Massengill confirmed that he was absolutely positive both Defendant and Taylor had guns and were shooting at them. Massengill identified the Defendant at trial as one of the shooters.

Investigator Marvin Jerome Rodish, Jr. was employed by the City of Jackson Police Department ("JPD") at the time of the incident. Investigator Rodish located and photographed nineteen shell casings and one bullet at the crime scene; however, due to a sudden rainstorm, he was only able to collect eighteen of the shell casings. Investigator Rodish testified that the majority of the shell casings were found on Conger Street "in a north to south trajectory." He agreed that the location of the shell casings indicated a direction moving towards where Patrick was found lying on the ground.

JPD Investigator Aubrey Richardson interviewed the Defendant on July 24, 2013. The Defendant's mother was present for the interview, and the Defendant signed a waiver of his Miranda rights. The Defendant provided the following written statement, which was read to the jury:

> I was there when Gary Patrick got shot Sunday morning. Me and Rambo, who is Randy Taylor, went to Allenton Heights the night before. Rambo and I were sitting there when Gary Patrick and some other guy walked by. Rambo, who was wearing a safari hat, got up and ran towards Gary and firing [sic] his chrome pistol at Gary. When he was shooting at Gary, Gary fell down and Rambo ran up to him and stood over him and fired his gun some more. We ran off and went back to where we came from. I went back to the house and Randy came in about thirty seconds later. He took the gun apart and eventually got rid of it. It had a long clip. He called someone he knew in a white van who took us to a trailer in the country. I don't know where it was but I don't think it was in Jackson. It may have been in Haywood County or something. We stayed there until Wednesday morning. Rambo told me not to tell on him and not to talk to anyone about this.

On cross-examination, Investigator Richardson confirmed that the Defendant was brought in by his mother for the interview. The Defendant was arrested after giving his statement.

Special Agent Eric Warren, an expert in forensic science firearm identification and ballistics, testified that he was employed by the Tennessee Bureau of Investigation and

assigned to the firearms identification unit in the Memphis Crime Laboratory. Warren analyzed the eighteen shell casings found at the scene and determined that the casings came from two separate guns.

After the State rested, the Defendant presented testimony from Nicholas Donald, who was a JPD patrol officer at the time of the incident. Officer Donald testified that he was the first officer on the scene. Officer Donald confirmed that Patrick described the shooter as wearing a "tan fishing hat and a plaid shirt." Officer Donald asked Patrick who shot him, and Patrick gave him the Defendant's name. Officer Donald confirmed that Patrick did not say there were two shooters at that time, however, on cross-examination, Officer Donald confirmed that, before he left the scene, it was clear to officers that there were two shooters.

At the conclusion of the proof, the Defendant was found guilty of the attempted second degree murder of Patrick in count one, unlawful employment of a firearm during the attempt to commit a dangerous felony in count two, the aggravated assault of Patrick in count three, the reckless endangerment of Massengill in count four, unlawful employment of a firearm during the attempt to commit a dangerous felony in count five, and the aggravated assault of Massengill in count six. On August 3, 2015, the State filed a motion to "honor and enforce" the jury's verdict. In its motion, the State conceded that the jury returned inconsistent verdicts in counts four and five by acquitting the Defendant of attempted first degree murder but convicting the Defendant of employing a firearm during the commission of the attempted first degree murder. The trial court heard argument on this motion at the sentencing hearing and concluded that the firearm conviction could stand notwithstanding any apparent inconsistency.

The trial court sentenced the Defendant to an effective sentence of twenty-three years' incarceration. At the sentencing hearing, the trial court also merged count three, the aggravated assault of Patrick, into count one, the attempted second degree murder of Patrick. Additionally, the court merged count four, the reckless endangerment of Massengill, into count six, the aggravated assault of Massengill. The Defendant filed a motion for new trial, which was denied after an evidentiary hearing on October 26, 2015. This timely appeal followed.

## ANALYSIS

On appeal, the Defendant argues that the evidence is insufficient and that the trial court improperly imposed consecutive sentences for counts two and five. The State responds that the evidence is sufficient to sustain all of the Defendant's convictions and that the trial court did not err by imposing consecutive sentences.

- 4 -

**I. Sufficiency of the Evidence.** First, the Defendant challenges the sufficiency of the evidence regarding all six of his convictions. "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Circumstantial evidence alone may be sufficient to sustain a conviction. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011). The jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

"The identity of the perpetrator is an essential element of any crime." Rice, 184 S.W.3d at 662 (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. State v. Cribbs, 967 S.W.2d 773, 779 (Tenn. 1998). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v.

Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Thomas, 158 S.W.3d 361, 388 (Tenn. 2005) (citing Strickland, 885 S.W.2d at 87). In addition, as relevant here, this court has held that "the testimony of a victim, by itself, is sufficient to support a conviction." Strickland, 885 S.W.2d at 87 (citing State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)).

A.    Attempted Second Degree Murder.    The Defendant first argues that the evidence is insufficient to support his attempted second degree murder conviction in count one because the State failed to prove beyond a reasonable doubt that he intended to commit a knowing killing of Patrick and because his identity as the shooter was not established beyond a reasonable doubt. The State responds that the evidence is sufficient.

As relevant here, a person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense, "[a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.]" T.C.A. § 39-12-101(a)(2). Second degree murder is the "knowing killing of another." Id. § 39-13-210(a)(1). "A person acts knowingly . . . when the person is aware that the conduct is reasonably certain to cause the result." Id. § 39-11-302(b).

Taken in the light most favorable to the State, the proof at trial showed that the Defendant and Taylor fired nineteen shots at Patrick while he ran away. The Defendant and Taylor continued shooting at Patrick after he fell to the ground, hitting him a total of thirteen times and leaving him paralyzed and wheelchair-bound as a result. A reasonable jury could have easily concluded that the Defendant intentionally shot Patrick with the knowledge that shooting the victim was reasonably certain to kill him.

Relative to the identity of the shooter, Patrick said that he knew the Defendant from school. Patrick identified the Defendant in a photographic lineup, at trial, and by name immediately after he was shot. Massengill also identified the Defendant at trial. Additionally, both victims testified that they turned around when they first heard shots and that they clearly saw the Defendant and Taylor shooting at them. The State's forensic expert also confirmed that two guns were used. Although the Defendant points to inconsistencies in the victims' testimony regarding what the shooters were wearing, this alone does not discredit the jury's verdict. Rather, the jury resolved any inconsistencies in the evidence or credibility issues with their verdict, and we will not re-weigh or re-evaluate the evidence on appeal. The Defendant is not entitled to relief on this basis.

- 6 -

B. _Aggravated Assault_. The Defendant next argues that the evidence is insufficient to support his aggravated assault convictions in counts three and six. However, as an initial matter, the Defendant's conviction in count three, regarding Patrick, was merged into the Defendant's conviction in count one, for the attempted first degree murder of Patrick. Regardless, we conclude that the evidence is sufficient to support both convictions.

In order to sustain the Defendant's conviction for aggravated assault, the State was required to prove beyond a reasonable doubt that the Defendant intentionally or knowingly caused the victims to reasonably fear imminent bodily injury by the use or display of a deadly weapon. See T.C.A. §§ 39-13-101(a)(2), 39-13-102(a)(1)(A)(iii). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." Id. § 39-11-302(a). A person acts "knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Id. § 39-11-302(b). However, "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. "Aggravated assault based on fear requires the victim to have a 'well-grounded apprehension of personal injury or violence.'" State v. Lonta Montrell Burress, Jr., No. E2013-01697-CCA-R3-CD, 2014 WL 6855226, at *8 (Tenn. Crim. App. Dec. 4, 2014) (quoting State v. Jones, 789 S.W.2d 545, 550-51 (Tenn. 1990)).

The Defendant claims that there was no serious bodily injury or display of a weapon to support his conviction for the aggravated assault of Massengill. However, the State was not required to prove both serious bodily injury and display of a weapon, and the record reflects that they elected to prove, and did prove, that the aggravated assault of both victims was accomplished by displaying a weapon while shooting at the victims, causing them to reasonably fear imminent bodily injury. The Defendant's claim is without merit.

C. _Reckless Endangerment_. The Defendant also appears to challenge his reckless endangerment conviction in count four by again claiming that the State did not prove his identity as the shooter beyond a reasonable doubt. As discussed above, we have already determined that the evidence was sufficient to establish the Defendant's identity as one of the shooters. Additionally, this count merged into the Defendant's conviction for the aggravated assault of Massengill, which we have also determined was supported by sufficient evidence. Likewise, we conclude that the evidence is sufficient to support the Defendant's conviction for the reckless endangerment of Massengill.

D. _Unlawful Employment of a Firearm during the Attempt to Commit a Dangerous Felony_. Next, the Defendant challenges his convictions in counts two and

five for unlawfully employing a firearm during the attempt to commit a dangerous felony. With regard to his firearm conviction for the attempted second degree murder of Patrick, the Defendant summarily contends that "a review of the evidence does not support a conviction beyond a reasonable doubt that [the Defendant] had a gun or fired a gun at Mr. Patrick because the evidence preponderates toward a conclusion that the shooter was actually the co-defendant, Mr. Robert Taylor, Jr." Because the Defendant provides no citations to the record, further analysis, or any legal citations in support of this argument, the issue is waived. See Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7). Additionally, we have already determined that the evidence was sufficient to support his conviction for attempted second degree murder and to establish his identity as one of the shooters and, thus, his argument is without merit.

Regarding the Defendant's firearm conviction related to Massengill, the Defendant argues that the jury's verdict was inconsistent because he was acquitted of the predicate felony, attempted first degree murder, and, instead, was found guilty of the lesser included offense of reckless endangerment, a misdemeanor.

In count five, the Defendant was indicted for employing a firearm during the commission of a dangerous felony, specifically, the attempted first degree murder of Massengill. The jury found the Defendant guilty of the firearm offense, despite having convicted him of the lesser included offense of reckless endangerment; thus, the verdicts are seemingly inconsistent. Nevertheless, the Tennessee Supreme Court has long held that inconsistent verdicts are allowed:

> Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment . . . . An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.

Wiggins v. State, 498 S.W.2d 92, 93-94 (Tenn. 1973). More recently, the Tennessee Supreme Court stated "that '[t]he validity accorded to [inconsistent] verdicts recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation.'" State v. Davis, 466 S.W.3d 49, 77 (Tenn. 2015) (quoting United States v. Zane, 495 F.2d 683, 690 (2nd Cir. 1974)).

Additionally, this court has found on multiple occasions that a conviction for employing a firearm during the commission of a dangerous felony can stand despite

acquittal of the dangerous felony. See State v. Joshua Johnson, No. E2015-00545-CCA-R3-CD, 2016 WL 297886 (Tenn. Crim. App. Jan. 25, 2016), perm. app. denied (Tenn. June 23, 2016) (affirming conviction for employing a firearm during the commission of a dangerous felony despite jury's acquittal of attempted first degree murder and conviction of the lesser included offense of facilitation of attempted first degree murder); see also State v. Demetrius J. Pirtle and Cordarius R. Maxwell, No. W2014-02222-CCA-R3-CD, 2016 WL 4009712 (Tenn. Crim. App. July 22, 2016), perm. app. denied (Tenn. Nov. 22, 2016) (affirming conviction for employing a firearm during the commission of a dangerous felony despite jury's acquittal of attempted first degree murder and conviction of the lesser included offense of attempted second degree murder). Despite the acquittal on the attempted first degree murder charge, the State presented evidence from which a rational trier of fact could have found that the Defendant committed attempted first degree murder, and that he thereby employed a firearm during the commission of a dangerous felony. Accordingly, the Defendant is not entitled to relief on this issue.

**II. Sentencing.** Finally, the Defendant challenges the trial court's imposition of consecutive sentences for both of his convictions for employing a firearm during the attempt to commit a dangerous felony. Specifically, the Defendant contends that the statute prohibiting the use of a firearm during the commission of a dangerous felony requires the sentence be imposed consecutively to the sentence imposed for the dangerous felony, and that he was not convicted of an underlying dangerous felony with respect to count five. The State concedes this fact but responds that consecutive sentencing was still permissible.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a). The Tennessee Supreme Court has held, "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of seven categories enumerated in code section 40-35-115(b). Those categories include:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood; (2) The defendant is an offender whose record of criminal activity is extensive; (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences; (4) The defendant is a dangerous offender whose behavior

- 9 -

indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high; (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims; (6) The defendant is sentenced for an offense committed while on probation; or (7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." Id. § 40-35-102(1); see State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2); Imfeld, 70 S.W.3d at 708.

In part, the trial court ordered consecutive sentencing based on section 40-35-115(b)(4), that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Regarding this subsection, the Tennessee Supreme Court has stated:

Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of [s]ection 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender.

State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002) (emphasis added) (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995)). Unlike the other six subsections, the trial court must make additional factual findings for the dangerous offender factor because it is "the most subjective and hardest to apply." Id. (quoting State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999)).

Here, the trial court made the following ruling regarding the Defendant's status as a dangerous offender:

Specifically, the circumstances surrounding the commission of the offense were aggravated. I think confinement for an extended period of time is necessary to protect society from the defendant's own willingness [sic] to lead a productive life. And the defendant's resort to criminal activity and violence for antisocial lifestyle and the aggregate length of the sentence as it reasonably relates to the offense for which he stands convicted.

The Defendant argues that the above findings were insufficient, however, we disagree. The record reflects that the trial court made the additional findings required of the dangerous offender classification regarding the severity of the offense and the need to protect the public from future acts of the defendant. We conclude that the trial court properly applied the dangerous offender classification in ordering consecutive sentences.

The Defendant also disputes the trial court's determination that consecutive sentences were further supported because the Defendant was on probation at the time he committed the offenses. He argues that "if there is a [j]uvenile [c]ourt order stating the [Defendant] received probation in 2013, then that order must clearly state the time limit of that probation or it cannot be used as a basis to determine that the [Defendant] was on probation." Again, the Defendant provides no supporting legal analysis or citations in support of this statement; therefore, the issue is waived. See Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7).

Waiver notwithstanding, we note that, even had the Defendant's probation claim been properly raised, the Defendant would still be subject to consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b)(4). As noted, the existence of only one factor is sufficient to impose consecutive sentencing. See T.C.A. § 40-35-115(b); Pollard, 423 S.W.3d at 862 ("Any one of these grounds is a sufficient basis for the imposition of consecutive sentences.") (citing State v. Dickson, 413 S.W.3d 735, 748 (Tenn. 2013)). Accordingly, the Defendant is not entitled to relief on this issue.

## CONCLUSION

Pursuant to the foregoing authority and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE